Charles Jacquin et Cie, Inc., Petitioner *v.* Daniel Pennick, Chairman, Pennsylvania Liquor Control Board; and Mario Mele, Commissioner of the Pennsylvania Liquor Control Board; and Ralph Barnett, Commissioner of the Pennsylvania Liquor Control Board; and Pennsylvania Liquor Control Board, Respondents.

Heard August 5, 1982, by Judge ROGERS.

*Bernard J. Smolens,* with him *Stephen J. Green-berg, Barry Simon,* and *Katherine E. Knox, Schnader, Harrison, Segal & Lewis,* for petitioner.

*Patrick M. McHugh,* Assistant Counsel, for respondents.

*Gerald Gornish,* with him *Denise D. Colliers,* of counsel: *Wolf, Block, Schorr and Solis-Cohen,* for Holt Hauling & Warehousing Systems, Inc. and Holt Cargo Systems, Inc.

MEMORANDUM OPINION AND ORDER BY JUDGE ROGERS:

On August 2, 1982, on motion of the petitioner Charles Jacquin et Cie., Inc. (Jacquin), we granted a rule upon the respondents Pennsylvania Liquor Control Board and the members of the Liquor Control Board (LCB) and on non-parties, Holt Cargo Systems Inc. and Holt Hauling & Warehousing Systems Inc. (Holt), to show cause why they should not be held to be in civil contempt by reason of the asserted failure of the LCB to secure Holt's compliance with, and the asserted failure of Holt to comply with, a consent order of this court made July 16, 1982 on agreement of Jacquin and LCB. The consent order provided:

3. Respondents shall refrain from interfering with or refusing to accept delivery of Petitioner's products made or to be made to the PLCB in the normal course of the business of the parties and shall cooperate with Petitioner in the making and receipt of such deliveries;

4. Respondents shall refrain from otherwise depriving Petitioner of any of its rights under any contract or purchase order between the parties;

We conducted an evidentiary hearing on August 5, 1982 at which Jacquin, LCB and Holt appeared and adduced evidence. We now dispose of the rule.

Jacquin is a producer of alcoholic beverages. It has manufacturing establishments in Philadelphia and Florida and has been a vendor to LCB for 45 years. Forty-five per cent of Jacquin's business has been with LCB and the sale of Jacquin's products constitutes eight per cent of LCB's total sales. Jacquin and the union representing its employees, Teamster's Local 500, have been attempting to agree on a new collective bargaining agreement since before February, 1982 when an existing agreement expired. In April, 1982, Jacquin's employees struck and established a picket line at the Philadelphia plant and from about that time Jacquin has shipped its products to LCB's several warehouses in Pennsylvania from its Florida plant.

On May 28, 1982 Jacquin filed its petition for review in the nature of complaint in equity, alleging that Local 500 had commenced picketing LCB's Pittsburgh warehouse; that a respondent member of the Liquor Control Board and another LCB official each told Jacquin's officers that LCB would not permit any more deliveries of products ordered from Jacquin because of Jacquin's labor troubles; and that LCB had thereupon refused to accept deliveries of ordered products at any of its warehouses. Jacquin requested preliminary and permanent injunctive relief. On May 28, 1982, we entered a Temporary Restraining Order and on June 4 and 12, 1982 (a week of argument sessions of the Commonwealth Court having intervened) conducted hearings on the subject of the continuance of the Temporary Restraining Order. At the June 12, 1982, hearing we were told that the parties might reach agreement on a form of consent order. On July 12, 1982, we conducted a further hearing at which a form

of consent order was presented. On July 16, 1982, based on written articles of agreement executed by the parties, we signed the consent order containing the language earlier quoted.

We conducted a hearing on August 5, 1982, on the rule for contempt issued August 2, 1982. It appeared from the evidence: that LCB has contracted with Holt for the latter to do LCB's work at the LCB's Philadelphia warehouse unloading, warehousing, and delivering LCB's merchandise to local liquor stores; that beginning in late June, 1982 and continuing thereafter the deliveries of Jacquin's products to LCB's Philadelphia warehouse have been often prevented by Local 500 pickets at the warehouse and/or the refusal of Holt's employees, members of Teamster's Local 158, to unload Jacquin's trucks; that Teamster's Locals 500 and 158 are members of the same Teamsters Joint Council; that beginning July 26, 1982 only one truck with Jacquin's products has been unloaded at LCB's Philadelphia warehouse by Holt's workers; that the refusal of Holt's workers to unload Jacquin's products is not a violation of their collective bargaining agreement with Holt which contains a clause exempting them from discharge or discipline for refusing to work behind a primary picket line; that on July 29, 1982 a member of the LCB, a respondent herein, held separate meetings first, with the president of Jacquin's and second, with representatives of Local 500 on the subject of an announcement lately made by Jacquin that due to the strike of its Philadelphia employees it would cease manufacturing operations in the Philadelphia plant; that the Board member just referred to concluded that Jacquin was wrong in moving from Pennsylvania and perhaps in other respects and prepared a resolution declaring that, effective August 16, 1982, LCB would "cancel all shipping permits for existing orders from Jacquin and issue no further per-

mits until further order''; that the LCB members adopted this resolution by unanimous vote on August 4, 1982; that since July 29, 1982 Jacquin has suggested that Holt should, as it assertedly was privileged to do under principles of labor law and the collective bargaining agreement with its employees, use its supervisory employees to unload Jacquin's trucks or should permit Jacquin's personnel to do so, but that Holt has not acceded to the first of these proposals apparently fearful that its employees would then engage in a work stoppage or file grievances; that the LCB has a representative at the warehouse who has done nothing to effect the unloading of Jacquin's trucks beyond asking Holt's union employees to do the work; that LCB has not directed Holt to use its supervisory people or take other steps to unload the trucks but that it has instructed Holt to comply with its contractual obligation to accept delivery of all products sent to the warehouse; that normally Jacquin would have delivered two truckloads of product each working day, each containing liquor sold to LCB for $35,000 and each representing a profit of $6,000 to Jacquin; and that each Jacquin truck could be unloaded in about an hour by two men.

We believe that we may not hold Holt in contempt of the July 16, 1982 order. Holt is not a party to the action and indeed did not procure the LCB warehouse contract until sometime in June, 1982. Jacquin did not seek to join Holt as a party respondent until after July 21, 1982 when difficulties at a picket line established by Jacquin's employees began, and the matter of Holt's joinder remains pending in this court.

As noted, although LCB has written letters to Holt that its failure to unload Jacquin's products is a breach of contract it has not suggested how this could be cured. In short, Holt seems to have received no

firm directive from LCB as to how it should proceed to have Jacquin's product on the warehouse dock. Although Holt's person in charge at the warehouse expressed reluctance to put his supervisory men to unloading the trucks or to permit the presence of Jacquin's personnel on the premises for this purpose, Holt has not been confronted with any of these alternatives by LCB.

Persons not parties to the action are bound to observe the restrictions of an injunction known to them to the extent that they may not aid or abet its violation by others. *Brightbill v. Rigo, Inc.,* 274 Pa. Superior Ct. 315, 418 A.2d 424 (1980); otherwise stated a nonparty may not knowingly assist a defendant in violating an injunction. *Alemite Manufacturing Corp. v. Staff,* 42 F.2d 832 (2nd Cir. 1930). Federal Rule of Civil Procedure 65(d) similarly provides that an injunction binds the parties, their servants, and agents and "those persons in active concert or participation" with the parties bound. The record does not show that Holt aided LCB in assertedly violating the court order or acted in concert or participation with LCB to this end.

Furthermore, the cases cited by the petitioner for the proposition that Holt's relationship with LCB is such that it is simply LCB's alter ego and hence bound to comply with the court order are inapposite. All of them concern non-party officers, servants, agents, or persons in peculiar privity with the party bound by the injunction. *United States v. Hall,* 472 F.2d 261 (5th Cir. 1972) on which the petitioner strongly relies is markedly dissimilar on the facts. There the nonparty held in contempt of a federal court desegregation order for blocking access to a public school was a member of a segregation group served with notice of the order who was found to have consciously and willfully defied the order.

We will discharge the rule on Holt.[1]

Nor, save in respect of its resolution of August 4, 1982, are we able to find the LCB or the individual members of the Board to be in contempt of the July 16, 1982 order. The evidence adduced by Jacquin primar-

---

[1] Additionally, the pleadings and documentary evidence presented to this Court describe conduct on the part of Holt which is arguably an unfair labor practice within the meaning of Section 8 of the National Labor Relations Act and, therefore, within the exclusive and preemptive jurisdiction of the National Labor Relations Board. Section 8(e) of the NLRA makes it an unfair labor practice for an employer and a labor organization to enter into any "agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person. . . ." Jacquin's Rule to Show Case as well as the characterization of the activities of Holt and its employees contained in documents submitted by the respondents as exhibits repeatedly describe the conduct from which relief is sought as the refusal by Holt's employees "to handle any of Jacquin's products for an indefinite period of time" with the acquiescence of Holt's management. Such a consensual refusal on the part of the management and unionized employees of one employer to handle the goods of another employer experiencing labor difficulties—commonly termed a "hot cargo" or "struck work" agreement—is, without more, secondary concerted activity within the proscription of Section 8(e). See *Lewis v. Seanor Coal Company*, 382 F.2d 437 (3d Cir. 1967), *cert denied*, 390 U.S. 947.

We were told at argument, in response to our inquiry as to whether jurisdiction in this matter might lie with the NLRB, that the parties' descriptions of the conduct of which Jacquin complains were unfortunate and inaccurate and that, in fact, no Holt employee had refused to handle the products of Jacquin but instead that Holt employees had lawfully refused to work behind a line of ambulatory Jacquin pickets on the Holt site; concerted activity of identical practical effect under these circumstances but of very different legal consequence. Of course, the assertions of counsel at argument are not evidence and cannot affect the Court's resolution of the issues as illuminated by the evidence that has been properly brought to the Court's attention. Nevertheless, inasmuch as the issue of Holt's liability has been resolved in its favor on another ground we find it unnecessary to make any further attempt to unravel this mystery,

ily concerned events beginning July 26, 1982. On July 27, 1982, July 28, 1982, July 29, 1982, August 2, 1982 and August 4, 1982, the LCB wrote Holt reminding it of its obligation to unload Jacquin's products in accordance with Holt's contract. On July 30, 1982, counsel for the LCB sent a telegram to Holt insisting on Holt's taking prompt action "in compliance with its contractual obligations." On or about August 4, 1982, the LCB directed its counsel to bring suit against Holt on the contract between the parties for its failures in this regard.[2]

Only nine working days intervened between July 26, 1982, the first date when Holt's workers' refusal to unload Jacquin's trucks was the sole cause of the failure of Jacquin's to reach the dock and our hearing on August 5, 1982. We are not impelled to find the LCB or its members in contempt of our order for their failure to do more in that short period of time than they did to have Jacquin's products delivered, especially as during that time the labor strife emanating from the inability of Jacquin and the union of its workers' inability to agree to the terms of a collective bargaining agreement was reaching into its warehouse and clouding its relationship with Holt. Jacquin's counsel suggests that the LCB might have cancelled Holt's warehousing contract with the result that the Board could for a time at least be without any means of receiving merchandise or making deliveries to local liquor stores or that LCB might have supplied LCB workers to unload Jacquin's trucks at the warehouse or that the LCB might have directed Holt to use its

---

[2] The contract between LCB and Holt is in the record. LCB may complain of Holt's failure to unload Jacquin's trucks as a breach of its contractual obligation to accept delivery of LCB's liquors. Holt will no doubt answer that it is absolved from liability by the Force Majeure provision exempting it from compliance, if prevented, *inter alia*, by work stoppages or labor disputes.

supervisory employees or to permit non-striking Jacquin employees to do the work. However, we fail to understand how the failure to take these steps demonstrates contempt. Paragraph 3 of the consent order binds LCB "to refrain . . . from refusing to accept delivery of Petitioner's products." Applying this language literally, we cannot say LCB has refused to accept delivery of Jacquin's products or in view of LCB's persistent demands on Holt to effect the receipt of Jacquin's products it has supinely submitted to Holt's employees' refusal.

We must consider the case in the context in which it first came to this court. The Temporary Restraining Order entered on May 28, 1982 was directed to Jacquin's assertions suported by affidavits that the LCB had threatened to refuse delivery of any of Jacquin's products because of the latter's "labor problems", with suggestion that LCB and others were attempting thereby to accommodate Local 500 by forcing Jacquin to settlement. The consent order was prepared and executed with the same issue before the court and this doubtless is why the consent order is in terms of restraint of LCB's refusal to accept delivery. Jacquin would have us now hold LCB in contempt of the order because it has not taken the affirmative steps it now suggests as a means of circumventing what it concedes is the lawful refusal of Holt's employees to handle Jacquin products. This we decline to do.

The Board's resolution of August 4, 1982, that "effective April 16, 1982, PLCB will cancel all permits for existing orders from Jacquin and issue no further permits until further notice" clearly provides for actions in prospective contempt of the consent order and we will order sanctions therefor.

ORDER

AND Now, this 11th day of August, 1982, the rule upon Holt to show cause why it should not be held in

contempt is discharged. The rule on the Pennsylvania Liquor Control Board and the individual members of the Board, is made absolute with respect only to the Board's resolution adopted August 4, 1982. The Pennsylvania Liquor Control Board is hereby fined $1,000 per day commencing August 18, 1982 and each of the individual respondent members of the Board is fined $500 per day commencing August 18, 1982; provided that each of the respondents may be purged of its or his said contempt by the Pennsylvania Liquor Control Board's rescission of said resolution on or before August 17, 1982.

It is further ordered that the respondents are, and each of them is, hereby enjoined and restrained from implementing any provision of said resolution of August 4, 1982 from this date forward.