Wentworth MILLER and Joy Miller, his wife; and C. Dennis Pegden and Lisa Pegden, his wife; and Patrick Curtis and Joan Curtis, his wife,

v.

The BOARD OF PROPERTY ASSESSMENT, APPEALS AND REVIEW OF ALLEGHENY COUNTY, and Larry Dunn, Michael Dawida and Robert Cranmer and County of Allegheny.

Appeal of Larry DUNN, Appellant.

Commonwealth Court of Pennsylvania.

Argued Nov. 6, 1997.

Decided Dec. 10, 1997.

Samuel P. Kamin and Ann Marie Williams, Pittsburgh, for appellant.

Harlan S. Stone, Pittsburgh, for appellees, Wentworth Miller, et al.

John A. Mulroy, Pittsburgh, for appellee, Allegheny County.

Before COLINS, President Judge, McGINLEY, (P.), J., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

Larry Dunn (Dunn), a member of the Board of County Commissioners of Allegheny County (County Commissioners), appeals from orders of the Court of Common Pleas of Allegheny County (trial court)[1] granting the request for declaratory judgment filed by Wentworth Miller, Joy Miller, C. Dennis Pegden, Lisa Pegden, Patrick Curtis and Joan Curtis (Plaintiffs). For the reasons which follow, we must quash Dunn's appeal.

This action commenced when Plaintiffs, owners of residential property assessed at or near their fair market value (FMV) in Allegheny County (County), filed a complaint for declaratory judgment, alleging, *inter alia*, that the Board of Property Assessment, Appeals and Review of Allegheny County (Board of Assessment) has failed to maintain uniformity and to keep current with FMV in its assessments of other real property in the County. Plaintiffs asserted that this has resulted in widespread disparities in the assessment of comparable real properties in the County.

Plaintiffs' complaint also alleged that once they took office, the County Commissioners caused the Board of Assessment to cease performing reassessments by enacting a

---

1. The Honorable R. Stanton Wettick, Jr.

property assessment "freeze."[2] Plaintiffs argued that the freeze was unlawful and unconstitutional.

Finally, Plaintiffs averred that the County's assessment system violates Section 4 of the Second Class County Assessment Law[3] which places the responsibility for making and supervising all real property assessments in the hands of the Board of Assessment rather than the County Commissioners. For a number of years, assessments in the County have not been made, revised or equalized by the Board of Assessment; rather, the County's assessment system has been managed by the director of the Department of Assessment, Appeals and Review (Department). The director of the Department is chosen by the County Commissioners or another County official with no responsibility to the Board of Assessment. The director does not report to the Board of Assessment or look to it for guidance. The Board of Assessment's role has been limited to simply hearing appeals.

Plaintiffs requested that the trial court declare the present system illegal and asked that the trial court direct the Board of Assessment to supervise the operation of the assessment system rather than the Department.

The trial court held hearings on February 27, 1997, April 14, 1997, April 15, 1997 and May 15, 1997 at which Kerry A. Fraas, Esquire, County Solicitor, appeared as counsel for the County as well as Messrs. Dunn, Michael Dawida and Robert Cranmer as members of the County Commissioners. None of the County Commissioners were represented by other counsel and none sought to participate in the hearings as a separate party.

By orders dated April 18, 1997 and May 22, 1997, the trial court declared the policy and practice of freezing property tax assessments in the County to be unlawful and instructed the Board of Assessment to commence the revision and equalization of assessments according to a schedule set forth in the trial court's May 22, 1997 order. The trial court's April 18, 1997 order also declared the Board of Assessment to be an independent agency with the exclusive responsibility for staffing and operating the County's assessment program.

Thereafter, on June 20, 1997, Dunn filed this appeal on his own behalf and as a member of the County Commissioners. Plaintiffs responded by filing a motion to quash, alleging that Dunn lacks standing to file the appeal. Plaintiffs subsequently filed a supplemental motion to quash after the trial court issued its July 9, 1997 opinion.[4] By order of this Court dated August 14, 1997, the motion to quash and the merits of the case were listed for argument.

In their motion to quash, Plaintiffs note that their complaint for declaratory judgment did not seek relief against any of the individual County Commissioners and stress that the trial court's orders similarly do not have any impact on the individual County Commissioners. Moreover, Plaintiffs argue, the County Commissioners were collectively represented by Mr. Fraas throughout the proceedings and, through him, the County Commissioners acquiesced in the trial court's orders regarding the revision and equalization of assessments. Lastly, Plaintiffs assert that even if Dunn had standing to bring this appeal, he has waived any arguments before this Court because he failed to file post-trial motions as required by Pa. R.C.P. No. 227.1.

In response, Dunn contends that because he was named individually in Plaintiffs' complaint, he has standing to bring the instant

---

2. On January 2, 1996, the Board of Assessment adopted a resolution which froze property assessments (with exceptions for new buildings, construction, improvements and subdivisions). This resolution was similar to a resolution adopted by the County Commissioners on January 1, 1996, that froze assessments for value increases or decreases except for physical changes to the property. The Board of Assessment intended for

the freeze to remain in effect for five years or until such time as a Countywide reassessment was completed.

3. Act of June 21, 1939, P.L. 626, *as amended*, 72 P.S. § 5452.4.

4. This opinion was filed pursuant to the requirements of Pa. R.A.P.1925.

appeal.[5] Dunn's brief in opposition to the motion to quash states, "The fact that Plaintiffs sued Defendant Dunn in his official capacity as a member of the Board of Commissioners does not transform the Complaint into a cause of action against the Board of Commissioners, an entity." (Dunn's brief at page 7). Furthermore, Dunn argues that although he was represented by Mr. Fraas at the May 15, 1997 proceedings before the trial court, he never consented to the matters discussed and agreed upon at the hearing.[6]

■ Having reviewed the averments of the complaint as well as the trial court's orders, we conclude that Dunn does not have standing to bring the instant appeal. Contrary to Dunn's assertions, we do not believe that he was sued in his individual capacity. In *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), the United States Supreme Court had occasion to discuss the differences between personal-capacity and official-capacity suits. The Court stated:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. ... Official capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' ... As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. ... It is *not* a suit against the official personally, for the real party in interest is the entity.

*Id.* at 165–166, 105 S.Ct. at 3105 (citations omitted)(emphasis in the original).

Here, there is no indication that Dunn was sued in any way other than in is official capacity as a member of the County Commissioners. The complaint clearly does not seek relief from Dunn as an individual and the trial court's orders in no manner bind Dunn beyond his official duties as a member of the County Commissioners.

The facts of the present case are similar to those discussed by the United States Supreme Court in *Bender v. Williamsport Area School District*, 475 U.S. 534, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986). In *Bender*, a group of students filed suit against the school district, members of the school board, the superintendent and the principal when the students' non-denominational prayer club was not permitted to meet during regularly scheduled school activity periods. The Unit-

---

**5.** Dunn's brief in opposition to the motion to quash alludes to a motion filed by Plaintiffs before the trial court entitled "Plaintiffs Petition for Supplemental Relief and Rule to Show Cause." In that motion, Plaintiffs sought, *inter alia*, to have the County Commissioners held in contempt for continuing to exert their influence over the Board of Assessment in violation of the trial court's April 18, 1997 order. The record does not indicate, however, that the trial court ever ruled on this motion.

Dunn asserts that because the Plaintiffs could seek contempt charges against him as a County Commissioner, he was therefore sued in his individual capacity. We do not agree. If Plaintiffs had been successful in holding Dunn in contempt, nothing would have prevented him, as a member of the Board of County Commissioners, *from appealing the trial court's determination.* However, the attempt by plaintiffs to hold Dunn in contempt of the trial court's order cannot be equated with Dunn being sued in his individual capacity in the declaratory judgment action. *See generally Charles Jacquin et Cie, Inc. v. Pennick*, 68 Pa.Cmwlth. 327, 449 A.2d 769 (1982).

**6.** The trial court described what occurred at the May 15, 1997 hearing as follows:

> At the May 15 1997 proceedings, which were transcribed, I stated that there had been meetings that had resulted in an agreement between plaintiffs' counsel and counsel for the defendants as to the procedures and methodologies that the Assessment Board will utilize in revising and equalizing assessments until the Assessment Board completes a Countywide assessment, along with an agreement that a Countywide assessment shall be completed no later than the year 2001 for use in the 2002 tax year with Allegheny County to provide appropriate funds for this assessment.
>
> During the May 15, 1997 proceedings, the only counsel participating for Allegheny County and for Larry Dunn, Michael Dawida and Robert Cranmer, members of the Board of Commissioners of Allegheny County, were Mr. Fraas and Mr. Mulroy. After I described the manner in which assessments are to be done in the County through the year 2002, I stated that it was my understanding that 'the county agrees with this, is not opposing this, is this correct?' Mr. Fraas stated that my understanding was correct....

(Trial Court opinion, July 9, 1997 at pages 5–6).

ed States District Court granted a motion for summary judgment in favor of the students. The school district took no appeal, choosing to comply with the District Court's order that it allow the students to meet. However, John C. Youngman, Jr., a member of the school board, did appeal the District Court's determination.

The Court of Appeals reversed, never addressing whether Mr. Youngman had standing to appeal. Subsequently, the United States Supreme Court granted certiorari. In its opinion, the Supreme Court for the first time addressed the standing issue. Initially, the Court reviewed the averments of the students' complaint, noting that the action was brought against the defendants in their "individual and official capacities." The Court went on to state:

> There is, however, nothing else in the complaint, or in the record on which the District Court's judgment was based, to support the suggestion that relief was sought against any School Board member in his or her *individual* capacity. Certainly, the District Court's judgment granted no such relief ... Accordingly, to paraphrase our holding in *Brandon v. Holt*, 469 U.S. 464, 469, 105 S.Ct. 873, 877, 83 L.Ed.2d 878 (1985), '[t]he course of proceedings ... make it abundantly clear that the action against [Mr. Youngman] was in his official capacity and only in that capacity.' ... Since the judgment against Mr. Youngman was not in his individual capacity, he had no standing to appeal in that capacity.

*Id.* at 543, 106 S.Ct. at 1332 (citations omitted)(emphasis in the original). The Court concluded that Mr. Youngman's status as a school board member did not permit him to invoke the school board's right to appeal. The Court stated, "Generally speaking, members of collegial bodies do not have standing to perfect an appeal the body itself declined to take." *Id.* at 544, 106 S.Ct. at 1333.

Presently, we face an almost identical scenario. Although the complaint for declarato-

ry judgment names Dunn individually, it does not seek judgment against him in his individual capacity. Furthermore, the trial court's orders were clearly directed to the County Commissioners as a group. Undoubtedly, both *Graham* and *Bender* support the proposition that Dunn's status as a member of the County Commissioners did not confer upon him the power to seek an appeal either individually or on behalf of the County Commissioners.

■ Dunn also asserts that although he was represented by Mr. Fraas at the May 15, 1997 proceedings before the trial court, he did not consent to the matters discussed and agreed upon at the hearing. Dunn argues that because his position was not presented to the trial court at the hearing, he is not bound by the trial court's consent decree dated May 22, 1997.

We find this argument to be meritless. At oral argument before this Court, counsel for Dunn admitted that Dunn was present during the course of the May 15, 1997 proceedings. Obviously, Dunn's presence at the hearing provided him with the opportunity to object to matters agreed upon during the course of the proceedings. Because neither Dunn nor his counsel, Mr. Fraas, took such action, we conclude that Dunn acquiesced in the trial court's consent decree.[7]

Accordingly, because Dunn does not have standing to bring the instant appeal, we must grant Plaintiffs' motion to quash.[8]

### ORDER

AND NOW, December 10, 1997, the motion to quash of Wentworth Miller, Joy Miller, C. Dennis Pegden, Lisa Pegden, Patrick Curtis and Joan Curtis is hereby granted.

---

7. As President Judge Colins noted at oral argument, if Mr. Fraas did not have Dunn's permission to bind him to the consent decree, Dunn's problem may rest with his counsel, not the trial court.

8. In light of this Court's determination with regard to the motion to quash, we need not address the merits of this action.