Lawrence W. DUNN and Carol L. Dunn, his wife, Coin Flip Associates, a Pennsylvania General Partnership, Mayview Road Associates Trust Agreement, Highland Farms Incorporated and Lowries Run Road Trust Agreement, on behalf of all similarly-situated taxpayers

v.

The BOARD OF PROPERTY ASSESSMENT, APPEALS AND REVIEW OF ALLEGHENY COUNTY and County of Allegheny and All Local Taxing Authorities Located in Allegheny County.

James T. Beebout and Karen L. Ferri, on behalf of themselves and others similarly-situated

v.

The Board of Property Assessment, Appeals and Review of Allegheny County and County of Allegheny and All Local Taxing Authorities Located in Allegheny County.

Appeal of: Lawrence W. Dunn and Carol L. Dunn, his wife, Coin Flip Associates, a Pennsylvania General Partnership, Mayview Road Associates Trust Agreement, Highland Farms Incorporated, and Lowries Run Road Trust Agreement, on behalf of all similarly-situated taxpayers.

Commonwealth Court of Pennsylvania.

Argued Feb. 3, 2005.

Decided June 1, 2005.

Reargument Denied July 28, 2005.

---

Dusty E. Kirk and Samuel P. Kamin, Pittsburgh, for appellants.

Ira Weiss, Pittsburgh, for appellees.

BEFORE: McGINLEY, Judge, FRIEDMAN, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

The appellants in this matter (Taxpayers)[1] appeal from the order of the Court of Common Pleas of Allegheny County (trial court) dismissing all counts of Taxpayers' second amended class action complaint. We affirm.

On January 1, 1996, the Allegheny County Board of Property Assessment, Appeals and Review (Board) adopted a resolution which froze property assessments for all of the approximately 414,000 properties located in Allegheny County. The following day, the Allegheny County Commissioners adopted a similar resolution intending to freeze the assessments until a county-wide reassessment was completed, or until five years had passed. A number of landowners initiated an action in the trial court (the Miller Litigation) seeking a declaratory judgment in which they alleged, *inter alia*, that the operation of the assessment system in Allegheny County resulted in a disproportionate tax burden upon them.

On April 18, 1997 and May 22, 1997, the trial court issued two orders in the Miller Litigation that determined that the freeze was unlawful, ordered the Board to undertake a county-wide reassessment, and ordered that remedial steps be taken to alleviate the negative effects of the freeze imposed by the Board and the County Commissioners.[2] In early 1998, the Board filed a petition for modification of the trial court's 1997 orders in the Miller Litigation. Based on the modification petition, in January and September of 1998, the trial court issued orders which included the imposition of a two percent increase in the assessed fair market value for all properties in Allegheny County for the 1999 tax year, and an additional two percent increase for the 2000 tax year.

Based upon these orders in the Miller Litigation, on January 1, 1999, the Board mailed a notice to all landowners in Allegheny County that the fair market value of their properties for 1999 will be increased by 2% by court order. As a result, on January 13, 1999, Taxpayers filed a class action complaint in the trial court on behalf of all property owners in Allegheny County, and naming the Board and Allegheny County as defendants.[3] On July 16,

---

1. The Taxpayers before us, on behalf of all similarly situated taxpayers, are Lawrence W. Dunn and Carol L. Dunn, his wife, Coin Flip Associates, a Pennsylvania General Partnership, Mayview Road Associates Trust Agreement, Highland Farms Incorporated and Lowries Run Road Trust Agreement. Taxpayers are the owners of taxable residential, commercial or industrial real property in Allegheny County, Pennsylvania.

2. The lead Taxpayer in the instant appeal, Lawrence W. Dunn, was an Allegheny County Commissioner at that time. He filed an appeal in this Court from the trial court's 1997 orders. However, this Court granted a motion to quash the appeal on the grounds that Mr. Dunn lacked standing to prosecute the appeal either individually or in his official

capacity as a County Commissioner. *See Miller v. Board of Property Assessment, Appeals and Review of Allegheny County*, 703 A.2d 733 (Pa.Cmwlth.1997).

3. Also in January of 1999, James T. Beebout and Karen L. Ferri filed a class action complaint on behalf of themselves and others similarly-situated individuals arising out of the assessment increase based on the trial court's orders. Taxpayers moved to have the actions consolidated, which motion was granted by the trial court. However, the Beebouts and Ferris had filed parallel tax appeals, thus rendering their claims moot and negating their representative status because they had been granted administrative appeals.

1999, the trial court granted Taxpayers' motion for leave to amend their complaint and to add additional defendants. Ultimately, on October 20, 1999, Taxpayers filed the instant second amended class action complaint in which they added all relevant taxing authorities in Allegheny County as additional defendants to the action.[4]

In the eight-count complaint Taxpayers initially sought class certification to represent all similarly situated taxpayers.[5] On December 10, 1999, the Board filed an answer and new matter to Taxpayers' second amended complaint. On December 14, 1999, the Core Defense Committee filed an answer and new matter to Taxpayers' second amended complaint.[6] On September 19, 2000, the trial court issued an order denying Taxpayers' motion for class certification. Taxpayers appealed the trial court's order to this Court.[7] On March 11, 2002, this Court issued an opinion and order reversing the trial court's order denying class certification, and remanding the matter to the trial court for proceedings consistent with the opinion. *See*

4. The trial court established a "Core Defense Committee" to represent the interests of the taxing authorities in Allegheny County.

5. The trial court summarized the claims raised in the second amended complaint, and the relief sought, as follows:

> Count I addresses my January 15, 1998 court order providing for the increased assessments by two percent. [Taxpayers] allege that the two percent increases violate the Second Class County [Assessment Law, Act of June 21, 1939, P.L. 626, as amended, 72 P.S. §§ 5452.1—5452.20,] and General County Assessment Law[, Act of May 22, 1933, P.L. 853, *as amended*, 72 P.S. § 5020–101—5020–602].

> Count II alleges that the [Board] violated by January 15, 1998 court order by using procedures for increasing the assessments that did not uniformly increase all property assessments.

> Count III alleges that the [Board] failed to comply with the express provisions of my Supplemental May 22, 1997 Court Order providing for a countywide reassessment.

> Count IV alleges that the County issued tax bills which were erroneous, misleading, and deceptive and in violation of taxpayers' State and Federal constitutional rights.

> Count V alleges that the [Board] issued tax bills which were erroneous, misleading, and deceptive and applied the two percent assessment increases at different ratios in violation of Federal and State Constitutions, federal law (42 U.S.C. § 1983) and state law.

> Count VI alleges that the County and the local taxing jurisdictions issued erroneous bills for taxes which cannot be collected under [Section 402(a) of the General County Assessment Law,] 72 P.S. § 5020.402(a) and that the tax bills and change notices resulted in a gross and unnecessary waste of taxpayers' money.

> Count VII seeks declaratory and injunctive relief based on allegations that the taxing authorities intend to or have assessed or levied taxes based on the unlawful two percent assessment, that they have collected taxes based on the unlawful assessment, and that these actions were unlawful and lacked any statutory authority.

Trial Court Opinion and Order 12/23/03 at 4–5. In Counts I through VII, Taxpayers sought the following relief: (1) a declaratory judgment that the procedures used to reassess properties in Allegheny County by two percent are unlawful and unconstitutional; (2) a declaratory judgment that the court orders of January 15, 1998 and September 21, 1998 were invalid; (3) a refund of taxes paid pursuant to the unlawful and unconstitutional reassessments; (4) attorneys fees and costs; and (5) such other relief which is just and appropriate under the circumstances. *Id.* at 5. In Count VIII, Taxpayers sought declaratory and injunctive relief including an injunction prohibiting the local taxing authorities from levying, assessing or collecting taxes attributable to the two percent increase. Id. at 5–6.

6. The record demonstrates that Allegheny County never filed an answer to the second amended complaint.

7. During the pendency of that appeal, Allegheny County conducted countywide reassessments of real property in 2001 and 2002.

*Dunn v. Allegheny County Property Assessment Appeals and Review,* 794 A.2d 416 (Pa.Cmwlth.2002).[8]

In December of 2002, Taxpayers filed a motion for recusal which alleged, *inter alia,* that as the trial court's orders were the basis of the instant action, the trial court should recuse itself from considering the propriety of those orders. In January of 2003, Taxpayers filed a motion for recusal from its recusal motion in which they alleged that the trial court should recuse itself from considering the recusal motion. On May 27, 2003, the trial court issued an order denying the recusal motion.

On September 12, 2003, the Core Defense Committee filed a motion for judgment on the pleadings. On September 22, 2003, Taxpayers filed a cross-motion for judgment on the pleadings.

On December 23, 2003, the trial court issued an opinion and order dismissing all of Taxpayers' claims for refunds of the taxes paid in the 1999 tax year and the 2000 tax year, and all claims seeking the award of attorney fees. With respect to the claims for refunds, the trial court determined that Taxpayers could not maintain a class action at law or in equity, or an action under 42 U.S.C. § 1983, as they failed to pursue an adequate statutory remedy for a refund of the purportedly improperly collected taxes under Sections 1 and 2 of the Act of May 21, 1943, P.L. 349, *as amended,* 72 P.S. §§ 5566b, 5566c (Refund Act).[9] *See* Trial Court Opinion 12/23/03 at 6–17.

On April 1, 2004, the trial court issued an opinion and order dismissing all of Taxpayers' remaining claims seeking injunctive and declaratory relief as they are now moot. *See* Trial Court Opinion 4/1/04 at 2–3 (footnote omitted)[10],[11] Based on the

---

**8.** Ultimately, on September 9, 2003, the trial court issued an order certifying the class.

**9.** Section 1 of the Refund Act provides, in pertinent part:

(a) Whenever any person ... of this Commonwealth has paid or caused to be paid, or hereafter pays or causes to be paid, into the treasury of any political subdivision, directly or indirectly, voluntarily or under protest, any taxes of any sort ... to which the political subdivision is not legally entitled; then, in such cases, the proper authorities of the political subdivision, upon the filing with them of a written and verified claim for the refund of the payment, are hereby directed to make, out of budget appropriations of public funds, refund of such taxes ... to which the political subdivision is not legally entitled. Refunds of said moneys shall not be made, unless a written claim therefor is filed, with the political subdivision involved, within three years of payment thereof.

73 P.S. § 5566b(a).

In turn, Section 2 of the Refund Act provides, in pertinent part:

In the event of refusal or failure on the part of authorities of the political subdivision involved to make any such refund of taxes ... to which the political subdivision is not legally entitled, or refusal or failure to pay interest as required by section 1, then the aggrieved person or corporation shall have the right to bring suit for and recover any such taxes ... to which the political subdivision is not legally entitled, subject to the limitation herein provided, by instituting an action in assumpsit in the court of common pleas of the county wherein such political subdivision is located.

72 P.S. § 5566c.

**10.** Specifically, in disposing of these claims the trial court stated the following, in pertinent part:

This lawsuit arises out of assessments for 1999 and 2000. Since the taxing bodies have already collected taxes based upon these assessments, there is nothing to enjoin. Furthermore, a declaration that the taxing bodies should not do so is meaningless because they have already acted.

The only meaningful relief would be a refund. In my December 23, 2003 Memorandum and Order of Court, I ruled that [Taxpayers'] complaint fails to state a claim for a refund of taxes paid on increased assessed values based on my January 15,

foregoing, the trial court issued a final order dismissing all counts of Taxpayers' second amended complaint *See Id.* at 6. Taxpayers then filed the instant appeal to this Court.[12]

■ In this appeal, Taxpayers claim: (1) the trial court erred in dismissing all of Taxpayers' claims for a refund of taxes and attorney fees in the second amended complaint without first addressing the constitutionality of its orders imposing the two percent increase in valuations for the tax years 1999 and 2000; (2) the trial court erred in denying their claim for refunds and declaratory and injunctive relief as its orders directing an increase in the assessed value for all properties in Allegheny County violate the Pennsylvania Constitution and statutes; and (3) the trial court erred in denying Taxpayers' motions to recuse.[13]

■ Taxpayers first claim that the trial court erred in determining that they were not entitled to receive refunds [14]

---

1998 court order and that counsel fees may not be recovered. *Id.* Likewise, the trial court determined that the exception to the mootness doctrine is not applicable as "[t]he issues raised are not of a recurring nature because assessed values of property located in Allegheny County are now based on a recent countywide reassessment of all properties." *Id.* at 3.

11. With respect to Taxpayers' claims of unjust enrichment, the trial court noted:
The doctrine of unjust enrichment is essentially an equitable doctrine. This doctrine is applied where the law does not provide any other remedies; the doctrine should not be extended to matters involving taxation where the Legislature had provided adequate remedies to the taxpayer. Otherwise, the doctrine of unjust enrichment would supersede the case law requiring the exhaustion of remedies and barring class actions for claims for refunds.
*Id.* at 5 (citation omitted).

12. As this Court has recently noted:
A motion for judgment on the pleadings should be granted only where the pleadings demonstrate that no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law. In reviewing trial court's decision to grant judgment on the pleadings, the scope of review of appellate court is plenary; reviewing court must determine if the action of trial court was based on clear error of law or whether there were facts disclosed by pleadings which should properly go to jury. An appellate court must accept as true all well-pleaded facts of the party against whom the motion is made, while considering against him only those facts which he specifically admits. Neither party can be deemed to have admitted either conclusions of law or unjustified inferences.
In conducting its inquiry, the court should confine itself to the pleadings themselves and any documents or exhibits properly attached to them. Only when the moving party's case is so clear and free from doubt such that a trial would prove fruitless will an appellate court affirm a motion for judgment on the pleadings.
*Newberry Township v. Stambaugh,* 848 A.2d 173, 174–175 n. 1 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 580 Pa. 708, 860 A.2d 491 (2004) (citation omitted).

13. These are the allegations of error raised in the Statement of Questions Involved portion of Taxpayers' appellate brief. *See* Brief for Appellant at 5. Those claims not set forth or suggested in the Statement of Questions Involved portion of the brief have been waived for purposes of appeal. Pa.R.A.P. 2116(a); *Mooney v. Greater New Castle Development Corp.,* 510 Pa. 516, 510 A.2d 344 (1986); *Mione v. Pennsylvania Board of Probation and Parole,* 709 A.2d 440 (Pa.Cmwlth.1998).

14. Although the Statement of Questions Involved portion of Taxpayers' appellate brief alleges that the trial court also erred in failing to award attorney fees, Taxpayers have failed to develop any argument in support of this claim in the Argument portion of their brief. Accordingly, any allegation of error in this regard has been waived based upon Taxpayers' failure to develop any argument in support of this claim in the brief that they filed in this Court. *See* Pa.R.A.P. 2119; *Rapid Pallet v. Unemployment Compensation Board of Review,* 707 A.2d 636 (Pa.Cmwlth.1998) (argu-

without first addressing the constitutionality of its orders imposing the two percent increase in valuations for the tax years 1999 and 2000. Taxpayers argue that, as in *Automobile Trade Association of Greater Philadelphia v. City of Philadelphia*, 528 Pa. 233, 596 A.2d 794 (1991), the trial court "put the cart before the horse", and erred in failing to address the constitutional issues before determining the availability of relief in the form of refunds. However, Taxpayers' reliance upon *Automobile Trade Association of Greater Philadelphia* is misplaced.

In *Automobile Trade Association of Greater Philadelphia*, automobile dealers and their trade association sought declaratory judgment and refunds of the Philadelphia Mercantile License Tax paid on the basis that the tax was violative of the uniformity requirement of Article 8, Section 1 of the Pennsylvania Constitution. While the matter was pending before the court of common pleas, the tax ordinance was repealed. The court subsequently granted summary judgment in favor of the City of Philadelphia on both the claims for declaratory relief and the claims for refunds. The court concluded that as the grant of retroactive relief is discretionary, it would not grant refunds even if it were to determine that the tax was unconstitutional. As a result, the court avoided addressing the constitutionality of the repealed tax ordinance. Following affirmance by this Court, the automobile dealers and trade association appealed to the Pennsylvania Supreme Court.

In reversing and remanding for further proceedings on the claims for refunds, the Supreme Court noted:

Here, the lower courts relied almost exclusively on the conclusory assertion that requiring refunds would impose a substantial hardship on the City's budget as the basis for denying retroactive application. Little attention was given to determining whether a decision that the tax violated the uniformity requirement was "clearly foreshadowed", the courts merely stating that the taxes had been "collected under a presumptively valid statute." More importantly, there was no discussion of the purpose of the uniformity rule and the effect retroactive or prospective application of a decision invalidating the Mercantile License Tax would have on its operation. This is not surprising, in that the courts did not actually find the tax to be violative of the uniformity provision, but instead avoided deciding that question by addressing the retroactivity question first. In approaching the questions in this manner, putting the cart before the horse, the courts below committed fundamental error.

It makes little sense to follow the precept of avoiding resolution of constitutional questions unless absolutely necessary, where the alternate grounds for decision call into play the reasoning necessary to the constitutional decision. The *Chevron Oil* [*v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971)] retroactivity analysis requires a full understanding of how the decision in ques-

ments not properly developed in an appellate brief will be deemed to be waived by this Court).

Moreover, this Court's review of the reasonableness of the trial court's refusal to grant an award of attorney fees is a matter which rests within the sound discretion of the trial court, and which will be altered by an appellate court only when there is a clear abuse of discretion. *West v. Hampton Township Sanitary Authority*, 661 A.2d 459 (Pa.Cmwlth. 1995). In the absence of any argument demonstrating the requisite abuse of discretion, we decline to disturb the trial court's determination in this regard.

tion was reached, and the purposes to be served by application of the decision. Such analysis is virtually impossible to undertake in any meaningful way where the "decision" is nothing more than assuming the unconstitutionality of the statute arguendo.

*Automobile Trade Association of Greater Philadelphia,* 528 Pa. at 238, 596 A.2d at 797 (footnote omitted).

In contrast, in the instant case, the trial court did not dismiss the claims for refunds on the basis that, after weighing the competing interests, such retroactive relief would not be appropriate under the circumstances of this case. Rather, the trial court dismissed the claims for refunds on the basis that such a remedy was not available to Taxpayers in the instant class action proceeding. *See* Trial Court Opinion 12/23/03 at 6–17.

■ It is well settled that taxpayers may not seek a refund of taxes through a class. action lawsuit. As this Court has recently noted:

> It is well settled that where the Legislature has provided a specific statutory remedy, the asserted need for a class action will not justify a deviation from the statutory remedy. *Lilian v. Commonwealth,* 467 Pa. 15, 354 A.2d 250 (1976). In *Lilian,* the Supreme Court noted that a class action is a procedural device and not a substantive right. The Court explained
>
> > class status or the lack of it is irrelevant to the question of whether an action is to be heard in equity or at law or whether, indeed, either form is available in light of the statutory remedy. With no independent basis for equity jurisdiction [taxpayers] cannot

generate it simply by alleging class status.

*Lilian,* 467 Pa. at 21, 354 A.2d at 253–54. *Lilian* follows the principles set down in *School District of Borough of West Homestead v. Allegheny County Board of School Directors,* 440 Pa. 113, 118, 269 A.2d 904, 907 (1970) (emphasis in original), wherein the Supreme Court stated:

> [I]f the legislature provides a specific *exclusive,* constitutionally adequate method for the disposition of a particular kind of dispute, no action may be brought in any 'side' of the Common Pleas to adjudicate the dispute by any kind of 'common law' form of action other than the exclusive statutory method.

Further, a class action will not be permitted where only an individual cause of action has been recognized. *Stranahan v. County of Mercer,* 697 A.2d 1049 (Pa. Cmwlth.1997).

In *Aronson v. City of Pittsburgh,* [98 Pa.Cmwlth. 1, 510 A.2d 871, 873 (Pa. Cmwlth.1986)] this Court held that a taxpayer must first petition the taxing authority for a refund, as required by the [Refund Act], before attempting to enforce its right thereto. To allow any taxpayer to sue for a refund without first filing the petition would violate the statute. Further, the plain language of that statute only allowed for an individual to maintain an action for a refund. Thus, we held that "the Legislature has seen fit to give only the aggrieved individual the right to sue for a refund. The right is personal and may not be transferred to another by way of class action." *Id.*[15]

---

**15.** *See also* Section 4 of the Second Class County Assessment Law, Act of June 21, 1939, P.L. 626, *as amended,* 72 P.S. § 5452.4(a) &

(c) ("The Board of Property Assessment, Appeals and Review shall have power and its duty shall be ... [t]o make and supervise the

*Zarwin v. Montgomery County,* 842 A.2d 1018, 1023–1024 (Pa.Cmwlth.2004) (footnotes omitted).[16]

■ It is equally well settled that taxpayers may not seek a refund of taxes pursuant to 42 U.S.C. § 1983 based on the purported violation of the Due Process and Equal Protection Clauses of the United States Constitution, as the Refund Act and the General County Assessment Law provide a plain, adequate and complete statutory remedy for the purportedly unlawful tax assessments. *See Jordan v. Fayette County Board of Assessment,* 782 A.2d 642, 645 (Pa.Cmwlth.2001) ("[F]inally, un-der Section 1 of the [Refund Law] ... where a taxpayer has paid taxes to which a political subdivision is not entitled, and no other remedy exists, the taxpayer may file a claim for refund of the payment. 72 P.S. § 5566b(a). Upon the filing of such a claim, the political subdivision must refund the taxes to which it is not legally entitled. 72 P.S. § 5566b(b). In the event that the political subdivision refuses to issue a refund, the aggrieved taxpayer has the right to bring suit for the recovery of such taxes. 72 P.S. § 5566c. We conclude that these statutory remedies adequately address taxpayers' interest in obtaining re-

making of all assessments and valuations of all subjects of taxation in the county as required by existing law ... [and t]o hear all cases of appeals from assessments, and all complaints as to assessments, error, exonerations and refunds...."); Section 518.1(a) of the General County Assessment Law, Act of May 22, 1933, P.L. 853, *added by* the Act of December 28, 1955, P.L. 917, *as amended,* 72 P.S. 5020.518.1(a) ("[A]ny owner of real estate or taxable property in this Commonwealth, who may feel aggrieved by the last or any future assessment or valuation of his real estate or taxable property, may appeal from the decision of ... the Board of Property Assessment, Appeals and Review, in counties of the second class ... to the court.... Provided, however, That the appeal shall not prevent the collection of the taxes complained of, but in the case the same shall be reduced, then the excess shall be returned to the person or persons who shall have paid the same: And provided further, That the appellant may pay the amount of the tax alleged to be due by reason of the assessment appealed from to the tax collector, under protest in writing, in which case when the tax is paid over to the taxing district, it shall be the duty of the tax collector to notify the taxing district of such payment under protest by delivering to it the protest in writing. Whereupon, the taxing district with the exception of cities of the second class and school districts of the first class A within such counties shall be required to segregate twenty-five per centum (25%) of the amount of the tax paid over, and shall deposit the same in a separate account in the depository in which the funds of the taxing district are deposited, and shall not be permit-ted to expend any portion of such segregated amount, unless it shall first petition the court alleging that such segregated amount is unjustly withheld.... Provided further, That upon final disposition of the appeal the amount found to be due the appellant as a refund, together with interest thereon, shall also be a legal set off or credit against any taxes assessed against appellant by the same taxing district....").

16. *See also Israelit v. Montgomery County,* 703 A.2d 722, 725 (Pa.Cmwlth.1997), *petition for allowance of appeal denied,* 555 Pa. 735, 725 A.2d 184 (1998) ("Taxpayers also contend that the trial court erred by concluding that their claims may not be resolved through a class action. This Court recently held that tax refunds sought in the context of a challenge to the constitutionality of the Law cannot be recovered through a class action. [*Stranahan*]. The Court reasoned in that case, in accordance with substantial case precedent, that a class action cannot be used to secure individual tax refunds, as the statutory right to seek a refund belongs solely to an aggrieved individual and that right may not be transferred to others through a class action.... [I]n each case the Court held that a class action could not be maintained because the statutory refund procedure either permitted only individual refund claims or provided an adequate remedy at law, or both. *See Stranahan* (statutory remedy permitted only individual refund claims and was adequate).") (footnote omitted).

dress for the payment of excess taxes, and therefore, that the trial court properly sustained the preliminary objections to taxpayers' Section 1983 claim."); *Murtagh v. County of Berks*, 715 A.2d 548, 552 (Pa. Cmwlth.1998), *petition for allowance of appeal denied*, 557 Pa. 656, 734 A.2d 863 (1999) ("[B]ecause Pennsylvania's administrative process for challenging tax assessments provides Taxpayers with an adequate state remedy, the trial court did not have subject matter jurisdiction to consider Taxpayers' Section 1983 action absent the exhaustion of their administrative and judicial remedies. Thus, we conclude that the trial court properly granted the County and Board's motion for judgment on the pleadings.") (footnote omitted).

■ Thus, unlike the taxpayers in *Automobile Trade Association of Greater Philadelphia*, in this case Taxpayers were precluded from obtaining refunds in the first instance due to the nature of the proceeding that they had initiated. As a result, unlike the court in *Automobile Trade Association of Greater ·Philadelphia*, in this case the trial court properly determined that the instant class action could not be maintained to obtain such relief.[17]

■ Taxpayers next claim that the trial court erred in denying their claim for refunds and declaratory and injunctive relief as its orders directing an increase in the assessed value for all properties in Allegheny County violate the Pennsylvania Constitution and statutes.[18],[19] Specifically,

---

17. Our prior opinion in *Dunn* does not compel a different conclusion. In that appeal, this Court merely considered whether or not the trial court had erred in denying the motion for class certification. Indeed, in considering whether or not an order denying the motion was directly appealable to this Court, we specifically noted that:

> A motion for class action certification is filed after the close of all pleadings, Pa. R.C.P. 1707, and in disposing of this motion, the *sole* consideration is whether the action shall continue as a class action or as an action with individual parties. In doing so, the court must consider, *inter alia*, whether the class meets the numerosity, typicality, and commonality requirements of Pa. R.C.P. 1701, as well as other criteria for class certification detailed in Rules 1708 and 1709. *The Rules specifically provide that 'the merits of the action and the right of the plaintiff to recover are to be excluded from the consideration....'*
>
> *Thus, because the considerations involved in disposing of a motion for class action certification are not at all related to the merits of the underlying claims raised in the complaint,* it is clear that an order denying class action certification is separate from and ancillary to the main cause of action, and, therefore, appealable pursuant to Pa. R.A.P. 313.

*Dunn*, 794 A.2d at 422–423 (quoting *Niemiec v. Allstate Insurance Company*, 721 A.2d 807, 809–810 (Pa.Super.1998)) (emphasis added).

Thus, in *Dunn*, the merits of Taxpayers' underlying claims for relief were specifically excluded from the determination of whether or not the trial court had erred in denying the motion for class certification.

Moreover, during the pendency of that appeal, Taxpayers' claims seeking declaratory and injunctive relief were viable claims. Such relief is appropriate in a class action proceeding. *See Parsowith v. Department of Revenue*, 555 Pa. 200, 207, 723 A.2d 659, 662 (1999) ("[S]ee generally *Israelit*[, 703 A.2d at 724] (allowing a taxpayer's constitutionally-based claims for declaratory and injunctive relief to proceed in the Commonwealth Court, while dismissing the taxpayer's request for tax refunds)....").

18. As a corollary · to this claim, Taxpayers assert that they are entitled to monetary damages based upon the equitable claim of unjust enrichment. Specifically, Taxpayers claim that allowing the taxing authorities to retain the taxes collected under the purportedly unconstitutional assessment increase would result in a windfall to the taxing bodies, and would not provide Taxpayers with any retrospective relief. As a result, Taxpayers assert that they are entitled to refunds based upon the equitable claim of unjust enrichment.

As this Court has previously noted, "[u]njust enrichment is an equitable doctrine. Unjust enrichment occurs when a person 'has and retains money or benefits, which in jus-

Taxpayers assert that, as in *Annenberg v. Commonwealth*, 562 Pa. 581, 757 A.2d 338 (2000), *cert. denied sub nom.*, *Annenberg v. Board of Commissioners of Montgomery County*, 531 U.S. 959, 121 S.Ct. 385, 148 L.Ed.2d 296 (2000), they are entitled to "meaningful backward-looking relief" to rectify the unconstitutional deprivation occasioned by the trial court's imposition of the increase in assessment valuation. As a result, Taxpayers allege that refunds are the only appropriate remedy in this case because no other remedy can afford them retrospective relief for the constitutional violation. However, Taxpayers' reliance upon *Annenberg* is misplaced.

In that case, the Supreme Court had exercised plenary jurisdiction over the matter, and considered whether the stock clause of the personal property tax, collected pursuant to a prior version of Section 1 of the Act of June 17, 1913, P.L. 507, *as amended*, 72 P.S. § 4821[20], violated the Commerce Clause of the United States Constitution by providing an exemption from taxation for shares held in entities either organized under the laws of this Commonwealth or which do business with-

tice and equity belong to another.' BLACK'S LAW DICTIONARY 1535 (6th ed. 1990). Further, under the principle of unjust enrichment, 'one person should not be permitted unjustly to enrich himself at [the] expense of another....' BLACK'S LAW DICTIONARY 1535 (6th ed. 1990) (emphasis added)." *Burley v. Department of Public Welfare*, 773 A.2d 230, 235 n. 14 (Pa.Cmwlth.2001). However, as outlined above, Taxpayers had an adequate statutory remedy to obtain the refunds they seek under this equitable doctrine. As a result, the trial court did not err in failing to grant refunds under this equitable doctrine. *See Meehan v. Cheltenham Township*, 410 Pa. 446, 448–449, 189 A.2d 593, 595 (1963) ("[T]he court below held that this action was cognizable in equity rather than in law because the equitable principle of unjust enrichment was involved. This reasoning overlooks the fact that law courts can and do apply equitable principles so long as the remedy sought is one within their power to·grant. Since law courts can give the remedy of money damages, an adequate remedy existed at law in the form of an action in assumpsit and equity therefore had no jurisdiction.") (footnotes omitted).

19. As a corollary to this claim, Taxpayers also allege that the trial court erred in failing to grant the requested declaratory and injunctive relief. However, as noted above, the taxes for the 1999 and 2000 tax years have already been collected, and Allegheny County conducted countywide reassessments in 2001 and 2002. Thus, the Taxpayers' claims for declaratory and injunctive relief have been rendered moot. Moreover, in their brief, Taxpayers concede as much by arguing that refunds are the only means by which they can receive meaningful backward-looking relief, and that there is no other available remedy for the purported constitutional violations. *See, e.g.*, Brief for Appellant at 13, 33, 36.

An issue can become moot during the pendency of an action due to a change in the facts of the case or due to a change in the applicable law. *In re Cain*, 527 Pa. 260, 590 A.2d 291 (1991). It is a well established principle of law that this Court will not decide moot questions. *Id.* "[T]he law is clear that an appeal will generally be dismissed for mootness when an event occurs while the appeal is pending which renders it impossible for the requested relief to be granted." *Atlantic Inland, Inc. v. Bensalem Township*, 39 Pa.Cmwlth. 180, 394 A.2d 1335, 1337 (1978). Accordingly, we will not address the Taxpayers' purported entitlement to declaratory and injunctive relief in this matter.

20. Section 1 formerly·provided, in pertinent part, that the personal property tax shall be paid on:

[A]ll shares of stock in any bank, corporation, association, company or limited partnership, created or formed under the laws of this Commonwealth or of the United States, or of any other state or government, except shares of stock in any bank, bank and trust company, national banking association, savings institution, corporation, or limited partnership liable to a tax on its shares or a gross premiums tax, or liable to or relieved from the capital stock or franchise tax for State purposes under the laws of this Commonwealth....

in this Commonwealth. Specifically, the Supreme Court noted that "[t]he net effect of the stock clause is that 'the only stock on which an owner is liable to pay tax pursuant to the stock clause is on stock in foreign corporations which do not do business in Pennsylvania.'" *Annenberg*, 562 Pa. at 586 n. 4, 757 A.2d at 341 n. 4 (citation omitted). Ultimately, the court determined that "[t]he portion of the stock clause which excludes from the personal property tax stock held in companies which are subject to the capital stock and franchise taxes is unconstitutional as it violates the Commerce Clause of the United States Constitution." *Id.* at 594, 757 A.2d at 346. In determining what relief was due, the court noted that "[t]he United States Supreme Court was confronted with a nearly identical situation in *McKesson v. Division of Alcoholic Beverages and Tobacco, Dept. of Business Regulation of Florida*, [496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990)]." *Id.* at 600, 757 A.2d at 349.

In *McKesson*, the United States Supreme Court held that if a state penalizes taxpayers for failing to remit taxes in a timely fashion, thereby requiring them to remit the taxes first and obtain review later, the Due Process Clause of the United States Constitution requires that the "[S]tate must provide meaningful backward-looking relief to rectify any unconstitutional deprivation." *McKesson*, 496 U.S. at 31, 110 S.Ct. 2238. In fashioning such relief in *Annenberg*, consistent with the dictates· of *McKesson*, the Pennsylvania Supreme Court noted that this could take the form of: (1) refunding the difference between the tax paid and the tax that would have been assessed had the unlawful exemption been applied to all taxpayers; (2) assessing and collecting the back taxes from those that had benefited from the unlawful exemption; and (3) applying a combination of a partial refund and a par-

tial retroactive assessment. *Annenberg*, 562 Pa. at 600–601, 757 A.2d at 349–350 (citing *McKesson*, 496 U.S. at 40–41, 110 S.Ct. 2238).

However, in outlining what the States may do to comport with the Due Process requirements, in *McKesson* the United States Supreme Court noted that:

> [I]n the future, States may avail themselves of a variety of procedural protections against any disruptive effects of a tax scheme's invalidation, such as providing by statute that refunds will be available to only those taxpayers paying under protest, or enforcing relatively short statutes of limitation applicable to refund actions. See supra at 45, 110 S.Ct. 2238 [("[T]he State might, for example, provide by statute that refunds will be available only to those taxpayers paying under protest or providing some other timely notice of complaint. . . .")]. Such procedural measures would sufficiently protect States' fiscal security when weighed against their obligation to provide meaningful relief for their unconstitutional taxation.

*McKesson*, 496 U.S. at 50, 110 S.Ct. 2238.

As outlined above, Section 4 of the Second Class County Assessment Law, 72 P.S. § 5452.4(a) & (c), and Section 518.1(a) of the General County Assessment Law, 72 P.S. § 5020.518.1(a), provided Taxpayers with a statutory scheme to contest the instant assessments, pay the taxes due thereon under protest, and to obtain a refund of the taxes paid. Thus, in accordance with the Due Process Clause, and as contemplated by the United States Supreme Court in *McKesson*, there was a statutory scheme in place under which Taxpayers could have obtained a refund of the purportedly unlawful taxes that were paid. *See* Section 518.1(a) of the General County Assessment Law, 72 P.S.

§ 5020.518.1(a) ("[A]ny owner of real estate or taxable property in this Commonwealth, who may feel aggrieved by the last or any future assessment or valuation of his real estate or taxable property, may appeal from the decision of ... the Board of Property Assessment, Appeals and Review, in counties of the second class ... to the court.... And provided further, That the appellant may pay the amount of the tax alleged to be due by reason of the assessment appealed from to the tax collector, under protest in writing.... Provided further, That upon final disposition of the appeal the amount found to be due the appellant as a refund, together with interest thereon, shall also be a legal set off or credit against any taxes assessed against appellant by the same taxing district....").

However, rather than availing themselves of this "constitutionally adequate" statutory scheme, Taxpayers instead chose to initiate the instant class action suit in which they are precluded from obtaining a refund of the purportedly unlawful taxes. *See Lilian; School District of Borough of West Homestead; Zarwin; Israelit; Stranahan; Aronson.* As a result, unlike the taxpayers in *Annenberg,* Taxpayers in the instant matter were provided with a post-deprivation statutory procedure which comports with due process; they simply chose not to proceed under the statute. Accordingly, Taxpayers' reliance on *Annenberg* is misplaced, and the trial court did not err in denying their claim for refunds.

Finally, Taxpayers claim that the trial court erred in denying their motions to recuse. Specifically, Taxpayers assert that as the instant action is a direct challenge to the constitutionality of the orders issued by the same trial court judge, only another judge or an appellate court could objectively rule on the constitutionality of the orders. Moreover, they assert that the record in this case demonstrates that the trial court could not objectively rule on the claims central to this matter and, as a result, should have granted the motion to recuse.

In general, recusal is required whenever there is substantial doubt as to a jurist's ability to preside over a matter impartially. *Dennis v. Southeastern Pennsylvania Transportation Authority,* 833 A.2d 348 (Pa.Cmwlth.2003). The mere participation by a trial judge in an earlier stage of a particular proceeding does not provide a per se basis for requiring recusal of the trial judge. *Commonwealth v. Lott,* 398 Pa.Super. 573, 581 A.2d 612 (1990), *petition for allowance of appeal denied,* 527 Pa. 663, 593 A.2d 839 (1991). Before it can be said that a judge should have recused himself, the record must clearly show prejudice, bias, capricious disbelief or prejudgment. *Dennis.*

In addition, it is well settled that a party seeking recusal or disqualification of a trial judge must raise the objection at the earliest possible moment or the claim will be regarded as time barred. *Reilly v. Southeastern Pennsylvania Transportation Authority,* 507 Pa. 204, 489 A.2d 1291 (1985). Moreover, the ultimate decision on recusal is within the sound discretion of the jurist whose recusal is sought. *Commonwealth v. Williams,* 557 Pa. 207, 732 A.2d 1167 (1999). Thus, the propriety of the trial court's ruling on a motion to recuse is reviewed under an abuse of discretion standard. *Reilly.*

The certified record in this case demonstrates that the original complaint was filed by Taxpayers in January of 1999, and assigned to the instant judge from the beginning. This same judge presided over the matter for nearly four years until the

instant motion to recuse was filed by Taxpayers in December of 2002. Thus, Taxpayers were barred from interposing the recusal motion at that late stage of the proceedings. *See, e.g., Reilly* (Eight-month delay in bringing motion for disqualification waived the issue where the party seeking disqualification had actual knowledge of the facts forming the basis of the motion.). As a result, the trial court did not abuse its discretion in denying the instant motions to recuse.

Accordingly, the order of the trial court is affirmed.

### *O R D E R*

AND NOW, this 1st day of June, 2005, the order of the Court of Common Pleas of Allegheny County, dated April 1, 2004 at No. G.D. 99–523, is AFFIRMED.